IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DEUNTAE THOMAS,         §
§
        Plaintiff,         §
§
V.                                 §         No. 3:22-cv-2144-L-BN
§
UNITED STATES POSTAL SERVICE, §
ET AL.,                      §
§
        Defendants.     §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Deuntae Thomas filed a *pro se* Complaint for Violation of Civil Rights against the United States Postal Service (the USPS); its general counsel and "all known and unknown named agents of the USPS," in their individual and official capacities; and the USPS Consumer and Industry Contact Office, in Coppell, Texas [Dkt. No. 3].

Thomas cites, without much elaboration, multiple federal statutes (including criminal ones) and alleges, among other things, that, beginning in 2019, the defendants conspired to violate his "constitutional rights and [ ] other unalienable equal civil rights to deliver mail for free or at a reduced rate pursuant to congressionally established mandates"; "made numerous felony statements and felony misrepresentations to cause [him] to not engage in [his] rights to deliver [his] mail matters for free or at reduced rate as congressionally established"; intentionally "obstructed, destroyed, defaced, and delayed [his] mail matters, mail matters belonging to the United States pursuant to 18 USC 1692 in conspiracy to defeat [his]

enjoying [his] rights to deliver mail matters at a free or reduced rate (where examples include tearing mail, writing/striking over mail, writing false statements on mail face, not delivering mail in a timely manner, placing labels and other stickers on mail or over addressee/addressor labeling) where no provision of law exists to engage as such"; and violated their oaths of office and to defend the Constitution of the United States of America. *Id.* at 3-8.

He seeks millions of dollars in monetary damages, to press criminal charges, and an apology. *See id.* at 10.

Because Thomas moved for leave to proceed *in forma pauperis* (IFP), United States District Judge Sam A. Lindsay referred this lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

The Court will grant Thomas leave to proceed IFP under separate order. And the undersigned enters these findings of fact, conclusions of law, and recommendation that the civil claims against the United States, its agencies, and its employees in their official capacities should be dismissed for lack of jurisdiction and that the civil claims for monetary damages against the individual defendants in their individual capacities should be dismissed with prejudice.

### Legal Standards and Analysis

First, insofar as the complaint cites federal criminal statutes, "decisions whether to prosecute or file criminal charges are generally within the prosecutor's discretion, and, as a private citizen, [Thomas] has no standing to institute a federal

criminal prosecution and no power to enforce a criminal statute." *Gill v. State of Tex.*, 153 F. App'x 261, 262-63 (5th Cir. 2005) (per curaim) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *United States v. Batchelder*, 442 U.S. 114, 124 (1979)); *see also Lefebure v. D'Aquilla*, 15 F.4th 650, 654 (5th Cir. 2021) (In *Linda R.S.*, "the Court repeatedly emphasized 'the special status of criminal prosecutions in our system.' It is a bedrock principle of our system of government that the decision to prosecute is made, not by judges or crime victims, but by officials in the executive branch. And so it is not the province of the judiciary to dictate to executive branch officials who shall be subject to investigation or prosecution.… As a result, courts across the country have dutifully enforced this rule in case after case – refusing to hear claims challenging the decision not to investigate or prosecute another person." (collecting cases; citations omitted)).

Relatedly, insofar as Thomas intends to bring civil claims under these criminal statutes, he fails to include allegations showing that he has a private right of action under any such statute. *See Ennis Transp. Co. Inc. v. Richter*, No. 3:08-cv-2206-B, 2009 WL 464979, at *1 (N.D. Tex. Feb. 24, 2009) ("It is well established that generally there is no private cause of action for the violation of a federal criminal statute, and thus no jurisdiction for federal courts to preside over a suit between private parties when the only federal law allegedly violated is criminal. In rare circumstances, however, where a criminal statute has 'a statutory basis for inferring' the existence of a civil action, violation of a criminal statute may give rise to a private cause of action." (citations omitted)); *see, e.g.*, *Tucker v. U.S. Court of Appeals for Tenth*

*Circuit*, 815 F. App'x 292, 294 (10th Cir. 2020) ("Sections 241 and 242 are criminal statutes that do not provide for private civil causes of action." (citations omitted)).

Turning to the civil claims, "[t]he United States enjoys sovereign immunity from suit, meaning it cannot be sued without consent." *Gonzalez v. United States*, 851 F.3d 538, 543 (5th Cir. 2017) (citations omitted). So, "[t]o maintain a suit in district court against the United States, a plaintiff must bring claims under a statute in which Congress expressly waives the United States' sovereign immunity." *Ortega Garcia v. United States*, 986 F.3d 513, 522 (5th Cir. 2021) (citation omitted); *see also Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021) ("Sovereign immunity is indeed a jurisdictional bar." (citation omitted)).

The same is true as to claims against its agencies, such as the USPS – "an independent establishment of the executive branch of the United States," *Brooks v. Wehner Multifamily, LLC*, No. 7:18-cv-102-O-BP, 2018 WL 6613360, at *1 (N.D. Tex. Nov. 29, 2018) (citing 39 U.S.C. §§ 101, 201; *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484-85 (2006)), *rec. accepted*, 2018 WL 6603827 (N.D. Tex. Dec. 17, 2018) – and against employees of an agency of the United States sued in their official capacities, *see Gibson v. Fed. Bureau of Prisons*, 121 F. App'x 549, 551 (5th Cir. 2004) (per curiam) (A plaintiff "may not bring an action against the United States, [an agency of the United States], or [that agency's employees] in their official capacities as such claims are barred by the doctrine of sovereign immunity." (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71-72 (2001); *Hafer v. Melo*, 502 U.S. 21, 25 (1991))).

Thomas identifies no applicable statute, under which sovereign immunity has

been waived.

And neither potentially applicable statute – the Postal Reorganization Act of 1970 (the PRA) or the Federal Tort Claims Act (the FTCA) – allows a plaintiff to bring constitutional claims against the USPS. *See Johnson v. Runyon*, 91 F.3d 131 (table), 1996 WL 405218, at *1 (4th Cir. July 19, 1996) (per curiam) ("Although [the PRA], specifically 39 U.S.C. § 401(1) (1988), authorizes the USPS 'to sue and be sued in its official name,' this Act does not completely eviscerate sovereign immunity. Rather, 39 U.S.C. § 409(c) (1988) restricts this waiver to tort claims cognizable under the [FTCA]." (citing *Ins. Co. of N. Am. v. U.S. Postal Serv.*, 675 F.2d 756, 758 (5th Cir. 1982))); *Jenoriki v. U.S. Postal Inspection Serv.*, 24 F.3d 240, 1994 WL 243467, at *1 (5th Cir. May 23, 1994) (observing that "[t]he sovereign immunity of the USPS has been waived only to the extent of the FTCA" (citing *Ins. Co. of N. Am.*, 675 F.2d at 758) but that "[a] constitutional claim does not arise under the FTCA and is barred by sovereign immunity" (cleaned up; citing *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 223 (5th Cir. 1989))); *A African-American U.S. Citizen v. Tennessee*, No. 3:08-cv-196, 2009 WL 676619, at *1 (E.D. Tenn. Mar. 11, 2009) ("To the extent plaintiff seeks to bring suit against the United States or the U.S. Postal Service under the U.S. Constitution, neither the United States nor the U.S. Postal Service has waived sovereign immunity for constitutional torts." (citing *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994); *Eure v. U.S. Postal Serv.*, 711 F. Supp. 1365, 1369-70 (S.D. Miss. 1989) (citing, in turn, *Ins. Co. of N. Am.*, 675 F.2d at 758)). *Cf. Rittgers v. United States*, 131 F. Supp. 3d 644, 653 (S.D. Tex. 2015) ("It is well-established that the FTCA is a

limited waiver of sovereign immunity." (citing *United States v. Orleans*, 425 U.S. 807, 813 (1976))).

Next, insofar as Thomas does bring claims against federal officers or employees in their individual capacities seeking money damages for violations of his constitutional rights, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), first allowed "an implied damages remedy under the Constitution itself," *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).

But *Bivens*, unlike 42 U.S.C. § 1983, is not a Congressional statute that "entitles an injured person to money damages if a state official violates his or her constitutional rights." *Id.* at 1854 ("Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government.").

The United States Supreme Court "has approved of an implied damages remedy under the Constitution itself" only three times – in *Bivens*, to enforce "a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures" in violation of the Fourth Amendment; in *Davis v. Passman*, 442 U.S. 228 (1979), holding "that the Fifth Amendment Due Process Clause gave [a Congressman's administrative assistant] a damages remedy for gender discrimination"; and in *Carlson v. Green*, 446 U.S. 14 (1980), holding "that the Eighth Amendment Cruel and Unusual Punishments Clause gave [a prisoner] a damages remedy for failure to provide adequate medical

treatment." *Abbasi*, 137 S. Ct. at 1854-55; *see also Egbert v. Boule*, 142 S. Ct. 1793, 1799-1800 (2022) (observing that from *Bivens* to then, the Supreme Court has "declined 11 times to imply a similar cause of action for other alleged constitutional violations" – *Egbert* made 12 (collecting cases)).

In *Abbasi*, the Supreme Court further "stressed that any extension of *Bivens* to new factual scenarios is now a '"disfavored" judicial activity.'" *Maria S. ex rel. EHF v. Garza*, 912 F.3d 778, 783 (5th Cir. 2019) (quoting *Abbasi*, 137 S. Ct. at 1857 (quoting, in turn, *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009))); *accord Egbert*, 142 S. Ct. at 1800 ("[O]ur cases have made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts."); *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) ("*Bivens* was the product of an '*ancien regime*' that freely implied rights of action. That regime ended long ago. Today, *Bivens* claims generally are limited to the circumstances of the Supreme Court's trilogy of cases in this area…." (citations omitted)), *cert. denied*, 141 S. Ct. 2669 (2021); *Byrd v. Lamb*, 990 F.3d 879, 881 (5th Cir. 2021) (per curiam) ("The Supreme Court has cautioned against extending *Bivens* to new contexts." (citing *Hernandez v. Mesa*, 140 S. Ct. 735, 744 (2020) (*Hernandez II*); *Abbasi*, 137 S. Ct. at 1861)); *Butler v. S. Porter*, 999 F.3d 287, 293 (5th Cir. 2021) ("Indeed, in recent decades, the Supreme Court has 'consistently refused to extend *Bivens* to *any* new context.'" (quoting *Malesko*, 534 U.S. at 68; citation omitted)).

So, as to whether Thomas may assert claims for money damages against any individual defendant for alleged constitutional violations, the Court should consider

the "two part inquiry for determining whether to allow a *Bivens* cause of action: (1) whether the instant case involves a 'new context' that is distinct from prior *Bivens* cases and (2) whether any 'special factors' preclude extending *Bivens* to this 'new context.'" *Maria S.*, 912 F.3d at 784 (citation omitted); *accord Oliva*, 973 F.3d at 441-42 ("Courts confronting *Bivens* claims generally 'must ask two questions. First, do [the plaintiff's] claims fall into one of the three existing *Bivens* actions? Second, if not, should we recognize a new *Bivens* action here?'" (quoting *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019))); *Byrd*, 990 F.3d at 881 ("Only where a claim arises in a new context should courts then proceed to the second step of the inquiry, and contemplate whether there are 'any special factors that counsel hesitation about granting the extension.'" (quoting *Hernandez II*, 140 S. Ct. at 743)).

> "The proper test for determining whether a case presents a new *Bivens* context is" whether it is "different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Abbasi*, 137 S. Ct. at 1859. A meaningful difference may include the Constitutional right at issue, the statutory or other legal mandate under which the officer was operating, or the presence of potential special factors that previous *Bivens* cases did not consider. *Id.* at 1860. "[E]ven a modest extension is still an extension." *Id.* at 1864.

*Canada v. United States*, 950 F.3d 299, 307 (5th Cir. 2020) (citation modified).

In short, "the proper test is whether the case differs in a meaningful way from *Bivens*, *Davis*, or *Carlson.*" *Id.* (citing *Abbasi*, 137 S. Ct. at 1859; *Loumiet v. United States*, 948 F.3d 376, 381-82 (D.C. Cir. 2020)). In practice, "[v]irtually everything else" – any case falling outside the specifics of these three cases – "is a 'new context.'" *Oliva*, 973 F.3d at 442 (citing *Abbasi*, 137 S. Ct. at 1865; *see also Byrd*, 990 F.3d at 883 (Willett, J., specially concurring) ("The *Bivens* doctrine, if not overruled, has certainly

been overtaken." And, at least in this circuit, after *Oliva*, "'[v]irtually everything' beyond the specific facts of the *Bivens* trilogy 'is a "new context"' …. And new context = no *Bivens* claim." (footnote omitted)).

Thomas's allegations, some of which are set out above, reflect that this case presents a "next context," distinct from prior *Bivens* cases.

The Court must therefore "contemplate whether there are '<u>any</u> special factors that counsel hesitation about granting the extension.'" *Byrd*, 990 F.3d at 881 (emphasis added; quoting *Hernandez II*, 140 S. Ct. at 743); *see Butler*, 999 F.3d at 294 ("Importantly, '[e]ven before *Abbasi* clarified the special factors inquiry, we agreed with our sister circuits that the only relevant threshold – that <u>a factor</u> counsels hesitation – is remarkably low." (emphasis added; citation omitted)).

Indeed, as the Supreme Court recently framed the inquiry, "under the proper approach, a court must ask '[m]ore broadly' if there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate.'" *Egbert*, 142 S. Ct. at 1805 (quoting *United States v. Stanley*, 483 U.S. 669, 681 (1987)). "If so, or even if there is the '*potential*' for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Id.* at 1805-06 (emphasis provided by *Egbert*; quoting *Abbasi*, 137 S. Ct., at 1859-60, 1864-65).

At least one special factor makes judicial intrusion inappropriate here. And only one is required.

In *Maynard v. United States*, No. 3:CV-06-2331, 2008 WL 4453199 (M.D. Pa. Sept. 30, 2008), for example, in which the plaintiffs, a husband and wife, asserted a

- 9 -

claim under the Equal Protection Clause against USPS employees and agents based on the wife's being denied access to a post office while accompanied by her service dog, the court held that, "[b]ecause Congress has provided explicit statutory remedies for complaints against the USPS pursuant to 39 C.F.R. § 255.6., a *Bivens* claim cannot be maintained against the USPS employees and agents," *id.* at *6 (citations omitted).

This statutory remedy explicitly applies to discrimination based on a disability. It's a special factor, nevertheless. *Cf. Oliva*, 973 F.3d at 444 (The "'silence of Congress is relevant' to the special-factors inquiry." (quoting *Abbasi*, 137 S. Ct. at 1862)).

As to applicable alternative relief more broadly, the PRA allows for claims consistent with the FTCA. And that the FTCA may not allow for Thomas's constitutional claims does not negate its presence as a special factor. *See Dolan*, 546 U.S. at 484-85. That is because "the separation of powers is itself a special factor." *Oliva*, 973 F.3d at 444 (citing *Abbasi*, 137 S. Ct. at 1862). So courts "must consider what Congress has done and what Congress has left undone." *Id. Cf. Watkins v. Carter*, No. 20-40234, 2021 WL 4533206, at *2 (5th Cir. Oct. 4, 2021) (per curiam) ("[T]here are special factors that counsel hesitation. The existence of the Federal Tort Claims Act weighs against inferring a new cause of action. *See Cantú*, 933 F.3d at 423 (citing 28 U.S.C. § 2680(h)). Additionally, the existence of the BOP's Administrative Remedy Program provides an alternative method of relief to *Bivens* actions. *Malesko*, 534 U.S. at 74; 28 C.F.R. § 542.10 (2001)." (citations modified)).

In sum, because this "case is a new context and there [is at least one] special factor[] that counsel[s] hesitation, [Thomas] does not have a viable *Bivens* claim

against the [individual defendants]." *Watkins*, 2021 WL 4533206, at *3.

## Recommendation

The Court should dismiss the claims against the United States, its agencies, and its employees in their official capacities for lack of jurisdiction; and dismiss the claims for monetary damages against the individual defendants in their individual capacities with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 5, 2022

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE